IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRISTINA M. SANCHEZ,               )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )       CIVIL ACTION NO. 2:11cv118-CSC
                                    )                 (WO)
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

## MEMORANDUM OPINION

### I.  Introduction

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11ᵗʰ Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to

entry of final judgment by the United States Magistrate Judge.  The case is now before the

court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Based on the court's

review of the record in this case and the briefs of the parties, the court concludes that the

decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005).  Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec., 3*63 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  DISCUSSION

**A. Introduction.**  The plaintiff was 32 years old at the time of the hearing before the ALJ and has a high school education.[4]  (R. 59).  Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "low back pain of uncertain etiology; mood

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

[4] Sanchez also attended some college but did not complete a degree.

disorder; generalized anxiety disorder; obesity; Temporomandibular joint disorder; polysubstance dependence; asthma; attention deficit hyperactivity disorder; and insomnia." (R. 14).   The ALJ also concluded that the plaintiff's substance use is a contributing factor material to the determination of her disability.  The ALJ then concluded that the plaintiff could not return to her past relevant work as a courier, denture maker, or bank teller.  (R. 25).  Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform work in the national economy.  (R. 26).

**B. Plaintiff's Claim.**  The sole issue presented by the plaintiff is whether the ALJ "erred in failing to give any consideration to the diagnosis that [she] suffers from a personality disorder, Borderline Personality Disorder."  (Pl's Br., doc, # 10 at 1).  Relying on the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (FOURTH) ("DSM-IV"), the plaintiff argues that because she has been diagnosed as suffering from Borderline Personality Disorder, the ALJ erred by not considering this severe impairment.  The court concludes that even if the Commissioner's failure to consider this impairment was error, it was harmless error.   *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in the Social Security case context).

The ALJ found that Sanchez suffered from severe impairments of mood disorder, generalized anxiety disorder, and polysubstance dependence.  (R. 14). He then concluded, that the plaintiff's substance use is a contributing factor material to the determination of her disability, and if she ceased using substances, these conditions would cause no more than mild limitations on her ability to work.  (R. 21).  At the first administrative hearing on

4

October 19, 2009, Sanchez testified that, although she had previously used marijuana, she had ceased use approximately two (2) months prior to the hearing. (R. 65). At the second administrative hearing on August 26, 2010, Sanchez admitted to smoking marijuana at least ten times since the last hearing because she was depressed. (R. 41.)

During a physical consultative evaluation on March 17, 2010 with Dr. Golomb, Sanchez admitted to continued marijuana use.

> However, she has used marijuana daily since she was 15 years old. "My therapist said it helped me maintain my health, especially when I was out of my medicine. I smoke it out of a pipe bowl. I used cocaine when I was 19, but not since." "I believe I'm hooked on marijuana; I really like it. But the social security doctor at my hearing on October 19, 2009, said I wouldn't get my disability if I used marijuana, because he said all my problems are due to marijuana use - but I still use it now."

(R. 676).

Dr. Golomb's opinion is illuminating because while he was assessing her physical condition, he commented on her mental condition.

> The medical evidence of record provided by the DDS was reviewed, and these findings were considered in the overall assessment of Christina M. Sanchez. She appeared to be mentally stable, with no signs characteristic of any psychoneurotic illness at this time, and physically, there were no gross abnormal objective findings. She gives a history of long-standing depression and bi-polar illness, with many years of using antidepressants, anxiolytic and potent analgesic medications, and I would conclude in saying that she in all likelihood has become quite dependent on most of them, as she has used them regularly, on a daily basis, for many years. Using the medications for their intended use is questionable, and I certainly concur with a comment made by another physician that the use of illicit drugs over the years may certainly have had an impact on her emotional and mental status. Should she become emotionally stable, she should be able to perform work-related activities such as sitting, standing, walking, lifting, carrying and handling objects, with only minor limitations. There is no problem with hearing or speaking, and she

could travel.

(R. 679).

At the first administrative hearing, Dr. Douglas McKeown, a medical expert, testified.

(R. 94-112).   The ALJ specifically asked Dr. McKeown about Sanchez's mental

impairments.

> Q:   Based on your review of the record, what are the Claimant's mental impairments that are demonstrable by medically acceptable clinical and/or laboratory diagnostic techniques?

> A:   We have a 32-year-old individual, high school education, limited college experience after that.  Has been able to obtain a driver's license.  Limited work history in the past.  The record would document a consultative examination run by Dr. Carl Kirkland (Phonetic) in April of 2007, and they submitted today additional assessment done by Dr. Kirkland in October of 2009.  In 2007, Dr. Kirkland did reference the Xanax, Soma and Lortab medications that the Claimant was taking.  Considered a generalized anxiety disorder as the primary difficulties.  In October of this year, recent report considered a bipolar disorder and a personality disorder NOS.  Of particular concern is the denial of any substance abuse at all since teenage years, made apparently to Dr. Kirkland, in both of those evaluations.  There are records available from Montgomery Mental Health that are referenced in the record.  And the primary treatment there has been for a bipolar disorder with medications that have included GEODON and atypical anti – excuse me, an atypical antipsychotic disorder, Effexor, and anti-depressant, Lamictal, generally a mood stabilizer, and Vistaril, and anxiolytic type medication.   And all the incidences throughout the record from Montgomery Mental Health the GAF scores are all very high at 65 or above.  And the records would indicate basically mild mental health related impairments.  There's also the reference in there to multiple medications taken for chronic pain, including Lortab, Xanax, Soma, Phenergan, and the like.  Again, in the mental health records from Montgomery Mental Health there's no reference to ever any history of substance use or abuse.  There is in the record Baptist Hospital records from September of 2007, Dr. David Harwood, who indicated in his report there the significant presence of multiple substances including

opiates, polysubstances, benzodiazepines and also marijuana, and a particular desire to – the Claimant did not want to deal with those particular issues.  Also the testimony today indicates regular use of marijuana on a daily basis up until apparently two months ago, which would indicate that is a very significant fact, and particularly considering the mood disorders and primary diagnoses that she now carries with Montgomery Mental Health. . . .

(R. 99-101).

Dr. McKeown describes her mood disorders as "substance-induced."  (R. 101).  He testified that "[d]aily use of marijuana as described by the Claimant in [his] opinion would still contribute it to being material, contributory and most likely the basis for her mood disorder, which apparently has not been reported to any of her other treatment personnel." (R. 104).

Although the ALJ did not specify that he was including limitations caused by Sanchez' Borderline Personality Disorder, in his hypothetical questions to the vocational expert, he included the following mental limitations.

. . . also limited to simple one and two-step tasks involving – well, actually limited to simple, routine tasks, involving no more than simple, short instructions and simple work-related decisions with few workplace changes. No more than occasional and non-transactional interaction with the public. No more than occasional interaction with co-workers.  Able to sustain concentration and attention for a two-hour period with customary breaks.

(R. 113-14).[5]  In so framing Sanchez's limitations, the ALJ included functional limitations attributable to borderline personality disorder.[6]

---

[5]  The ALJ asked a substantially similar question at the second administrative hearing.  *See* R. 51.

[6]  Sanchez's reliance on the DSM-IV description of Borderline Personality Disorder is misplaced, particularly since the DSM-IV specifically indicates that symptoms of Borderline Personality Disorder may develop with chronic substance use.  Borderline Personality Disorder "must be distinguished from **symptoms**

The vocational expert testified that such a person would not be able to perform her past relevant work but that there exists in the national economy other jobs in significant numbers that she could perform.  (R. 114-15).  The ALJ's hypothetical questions to the vocational expert included all functional limitations by presented by Sanchez' mental impairments.  Thus, the court concludes that the ALJ adequately incorporated Sanchez's mental limitations in his hypothetical questions to the VE, and any error at step 2 of the sequential analysis was remedied at step 5.  *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.")

Moreover, Sanchez has failed to demonstrate that she suffers from limitations not considered by the ALJ in his questioning of the VE or in his ultimate determination that she was not disabled.  "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988).  This the plaintiff has failed to do.

---

that may develop in association with chronic substance use." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (FOURTH) § 301.83, p.  424.  (emphasis in original).  In this instance, neither the DSM-IV nor the court limits Sanchez's substance use to marijuana.  The record is clear that for many years, she has been prescribed numerous prescription medications including Xanax, Effexor, and Soma.

8

Even if the error was not harmless, it is clear that the ALJ considered Dr. Kirkland's opinions regarding Sanchez's mental impairments including borderline personality disorder. When determining the medical evidence, the ALJ gave greater weight to the opinion of Dr. McKeown, the non-examining medical expert who testified at the administrative hearing, that Sanchez's substance abuse is a contributing and material factor to the severity of her moods disorders. The ALJ also considered the opinion of Dr. Kirkland, an examining psychologist, that she suffers from a personality disorder.  The ALJ described Dr. Kirkland's diagnoses from his second evaluation of Sanchez. "Following a thorough evaluation, Dr. Kirkland diagnosed bipolar disorder, history of panic disorder with agoraphobia, borderline personality disorder, 8th grade reading level, and chronic back pain by self-report." (*Id.*) After considering Dr. Kirkland's reports, the ALJ considered Dr. Kirkland's opinions as follows:

> The undersigned has considered the opinion of Dr. Kirkland in accordance with 20 CFR 404.1527 (Exhibit 3F).  As it relates to the listed impairments, this opinion merits significant weight.  However, the claimant appears to have misled the examiner concerning her substance use.   Consequently, the omission of substance abuse from the diagnoses merits no substantial weight.

> \*       \*       \*

> The undersigned has also considered the second opinion of Dr. Kirkland, obtained by the claimant's attorney (Exhibit 11F).  After reviewing this evaluation, it is noted that it was based, in part, on the notion that the claimant "last worked in 2006" for Lee High School.  However, the record indicates that the claimant worked for four to five months in 2006 and 2007 for Martin's Restaurant and worked for a period beginning November 2008 for Aspire Staffing (Exhibits 3D & 5D).  In addition, Dr. Kirkland indicated that the claimant "does not use drugs or alcohol," which suggests that the claimant again misled the examiner regarding her substance use.  Accordingly, as it

relates to the listed impairments, the opinion merits significant weight but the omission of substance abuse merits no significant weight.[7]

(R. 24).

Thus, it is clear that the ALJ considered Dr. Kirkland's opinions while giving greater weight to the opinion of Dr. McKeown. This he was entitled to do, especially since Dr. Kirkland's opinion was based, at least in part, on the plaintiff's patent misrepresentations about her drug use.

## IV. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 10th day of February 2012.

            /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[7] This statement by the ALJ is at best ambiguous and at worst nonsensical. However, the medical expert was asked about Dr. Kirkland's opinion and stated that the fact that Sanchez apparently lied to Dr. Kirkland about her drug use "limits the significance of the consultative opinion." (R. 109).

10